**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

* * *

ORLANDO E. COLINDREZ CORONA,

Petitioner,

v.

TODD BLANCHE, *et al*.,

Respondents.

Case No. 2:26-cv-03315-RFB-EJY

**ORDER GRANTING WRIT OF HABEAS CORPUS**

Before the Court is Petitioner Orlando Enrique Colindrez Corona's Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241 (the "Petition") (ECF No. 1-1). For the following reasons, the Court grants the Petition.

## I. INTRODUCTION

Petitioner challenges the lawfulness of his ongoing detention at Nevada Southern Detention Center in the custody of Immigration and Customs Enforcement ("ICE"). Respondents claim to be detaining Petitioner under both 8 U.S.C. § 1226(a) and 8 U.S.C. § 1225(b)(2)(A). Compare Fed. Resp'ts' Resp. to Court Order at 3, ECF No. 8 (October 16, 2026) [hereinafter, "Return"] with Fed. Resp'ts' Answers to Interrogatories at 3, ECF No. 8-2 (October 16, 2026).

Broadly speaking, these provisions of the Immigration and Nationality Act ("INA") authorize the detention of certain noncitizens throughout their immigration proceedings. Critically, 8 U.S.C. § 1226(a) authorizes release on bond, while 8 U.S.C. § 1225(b)(2)(A) does not.[1]

Petitioner asserts that his detention is governed by 8 U.S.C. § 1226(a), not § 1225. See

[1] Even when § 1225(b)(2)(A) is properly construed, it is not absolute. Noncitizens detained under § 1225(b) may be temporarily released on parole "for urgent humanitarian reasons or significant public benefit" at the arresting ICE officer's discretion. Rodriguez Vazquez v. Bostock, 183 F.4th 1160, 1169 (9th Cir. 2026) (quoting 8 U.S.C. § 1182(d)(5)(A)).

Reply in Support of Petition, ECF No. 14 (November 13, 2026) [hereinafter, "Traverse"]. Petitioner seeks release from detention because Federal Respondents have purportedly refused to comply with § 1226(a) and its implementing regulations, and this Court's class-wide partial summary judgment. See generally Traverse. Petitioner also asserts his continued arrest and detention, without required procedures, violate the Due Process Clause of the Fifth Amendment. See id.

As discussed below, the Court finds that Petitioner may only be detained under 8 U.S.C. § 1226(a). Therefore, his arrest and ongoing detention without the full suite of procedures guaranteed by 8 U.S.C. § 1226(a) and its implementing regulations run afoul of the INA and the law of this circuit. Further, the Court finds Petitioner's arrest and ongoing detention without the procedural protections required by § 1226(a)'s regulatory scheme violate his constitutional right to due process. Finally, the Court finds the appropriate remedy for Petitioner's unlawful detention—and the government's continued pattern of defiance in immigration detention procedures is: (i.) immediate release from custody; (ii.) a permanent prohibitory injunction against re-detention under § 1225(b)(2)(A); and (iii.) an order requiring Federal Respondents to follow appropriate procedures if they seek to re-detain Petitioner under § 1226(a).

## II. FINDINGS OF FACT

The Court makes the following findings of fact. See Carlson v. Landon, 186 F.2d 183, 188 (9th Cir. 1950) (describing the factfinding process in habeas corpus proceedings). Petitioner Colindrez Corona entered the country without inspection, admission, or parole by an immigration officer. See Form I-213, ECF No. 8-1 at 3. On October 2, 2026, Petitioner was arrested by ICE in Las Vegas, Nevada. See id. In his current removal proceedings, Petitioner is charged with being present in the United States without being admitted or paroled. See id.; Form I-862, ECF No. 8-1 at 9.

## III. CONCLUSIONS OF LAW

### A. VIOLATION OF THE INA

The Ninth Circuit recently addressed the issue of whether § 1225(b)(2)(A) or § 1226(a) governs the detention of noncitizens arrested while present in the interior of the United States. See Rodriguez Vazquez v. Bostock, 183 F.4th 1160 (9th Cir. 2026). In that case, the Ninth Circuit considered the government's new interpretation of 8 U.S.C. § 1225(b)(2)(A), "that unadmitted [noncitizens] present in the interior of the country are subject to mandatory detention without bond." Id. at 1164. This was in stark contrast to the "longstanding approach" of treating the detention of noncitizens present in the interior as governed by 8 U.S.C. § 1226. Id. The court in that case engaged in detailed statutory analysis of the two INA provisions and the broader statutory scheme to come to the ultimate conclusion that the best reading of the statute was that § 1225(b)(2)(A) applies to noncitizens entering the United States at the border and § 1226 applies to noncitizens in the interior. Id. at 1193 ("In this case, the better and more natural interpretation of the text, considered in context, is that Congress in 1996 did what practice and precedent long understood it to have done: subject unadmitted aliens entering the United States at the border to § 1225(b)(2)(A), and unadmitted aliens present in the interior of the country to § 1226.")

In coming to this conclusion, the Ninth Circuit spent considerable time analyzing the phrase "seeking admission" in § 1225(b)(2)(A). See id. at 1173–1180. According to the government's interpretation of the statute, all noncitizens who are "applicants for admission" were necessarily "seeking admission," effectively making the former phrase superfluous in the statutory text. See id. at 1175. The Ninth Circuit rejected this understanding of the statute as being the less persuasive interpretation. Id. at 1176. It further found that this reading of § 1225(b)(2)(A) would make the newly enacted § 1226(c), the Laken Riley Act, statutory "surplusage." Id. at 1186. The court was additionally unable to find support for the government's interpretation in the "statutory purpose and the government's post-1996 enforcement practices." Id. at 1187. In coming to its final holding, the Ninth Circuit joined the First, Second, Third, Fourth, Sixth, Seventh, Tenth, and Eleventh Circuits in its determination that § 1225(b)(2)(A) applies to noncitizens at the border and § 1226(a) applies to noncitizens in the interior of the United States. Id. at 1193; see Guerrero Orellana v. Moniz, 188 F.4th 1 (1st Cir. 2026); Barbosa da Cunha v. Freden, 175 F.4th 61 (2d Cir. 2026), cert. granted sub nom. Rhoney v. Barbosa da Cunha, No. 26-104, 2026 WL 2942994 (U.S.

Oct. 1, 2026); Buele Morocho v. Warden, 189 F.4th 287 (3d Cir. 2026); Lopez Garcia v. Guadian, 190 F.4th 305 (4th Cir. 2026); Lopez-Campos v. Raycraft, 175 F.4th 713 (6th Cir. 2026); Rojas v. Olson, 183 F.4th 909 (7th Cir. 2026); Quiroz v. Mullin, 180 F.4th 1226 (10th Cir. 2026); Alvarez v. Warden, 175 F.4th 1258 (11th Cir. 2026).

The Court must—once again—reiterate its finding, and the law of this circuit, that Petitioner's detention can only be governed by 8 U.S.C. § 1226(a). Thus, Petitioner's arrest and detention without the procedures guaranteed by 8 U.S.C. § 1226(a)—namely, an initial custody determination and a custody redetermination—violate the INA and this Court's declaratory judgment in Jacobo-Ramirez v. Mullin, 834 F. Supp. 3d 1073, 1111 (D. Nev. 2026). See Fed. Resp'ts' Answers to Interrogatories at 3, ECF No. 8-2 (stating that an initial custody determination was not conducted as to Petitioner); see Return at 3 (conceding that "Petitioner is entitled to a bond hearing under 8 U.S.C. § 1226(a) if he requests one", indicating that Petitioner has not received a custody redetermination hearing).

**B. DUE PROCESS**

Given that the Petitioner's detention is governed by § 1226, the Court turns to the merits of Petitioner's due process claim. As a threshold matter, noncitizens charged with being present in the U.S. unlawfully are entitled to due process under the U.S. Constitution. See, e.g., Escobar Salgado v. Mattos, 809 F. Supp. 3d 1123, 1158–60 (D. Nev. 2025). The Due Process Clause of the Fifth Amendment protects "every one" of the "millions of [noncitizens] within the jurisdiction of the United States" "from deprivation of life, liberty, or property without due process of law. . . . Even one whose presence in this country is unlawful, involuntary, or transitory is entitled to that constitutional protection." Mathews v. Diaz, 426 U.S. 67, 77 (1976) (citations omitted); see also Shaughnessy v. U.S. *ex rel.* Mezei, 345 U.S. 206, 212 (1953) (The Due Process Clause guarantees that noncitizens "who have once passed through our gates, *even illegally*, may be expelled only after proceedings conforming to traditional standards of fairness encompassed in due process of law.") (emphasis added), superseded by statute on other grounds as stated in Dep't of Homeland Sec. v. Thuraissigiam, 345 U.S. 206 (2020); Zadvydas v. Davis, 533 U.S. 678, 693 (2001)

(citations omitted) (Noncitizens who have entered our country are entitled to due process "whether their presence here is lawful, unlawful, temporary, or permanent."). Hence, the Supreme Court has consistently—and repeatedly—held that the Executive Branch cannot "disregard the fundamental principles" of "due process" while interacting with noncitizens who have "entered the country, and [ ] become . . . a part of its population," even those who are allegedly undocumented. See, e.g., Yamataya v. Fisher, 189 U.S. 86, 101 (1903); see also U.S. v. Raya-Vaca, 771 F.3d 1195, 1203 (9th Cir. 2014) ("This long line of precedent admits no exception: [a noncitizen] who has entered the United States is guaranteed due process protections.").

Physical freedom "lies at the heart" of the Due Process Clause—*i.e.*, an individual cannot be deprived of their physical freedom without due process of law. See Zadvydas, 553 U.S. at 690 (citation omitted). Furthermore, "notice and an opportunity to be heard" constitute the "fundamental features of due process[.]" Rodriguez Diaz v. Garland, 53 F.4th 1189, 1205 (9th Cir. 2022) (quoting Miranda v. Garland, 34 F.4th 338, 358 (4th Cir. 2022)). Thus, it follows that when the government subjects noncitizens to civil detention without supplying these basic, *fundamental*, procedural safeguards, their actions run afoul of the Due Process Clause.

Meanwhile, § 1226(a) and its implementing regulations set forth a scheme designed to guarantee certain noncitizens "substantial procedural protections" against the erroneous deprivation of their liberty—as recognized by the Ninth Circuit. See Jacobo-Ramirez, 834 F. Supp. 3d, at 1088 (quoting Rodriguez Diaz, 53 F.4th at 1196). These protections include, but are not limited to, four key procedures for the purposes of this analysis: (1) service of a notice to appear, which provides critical context as to the basis for detention; (2) any arrest and custody under this provision must be pursuant to a lawfully executed administrative warrant; (3) at the outset of detention, a noncitizen detained under this provision receives an initial custody determination by the agency; and (4) the noncitizen then has an ability to appeal said custody determination—*i.e.*, receive a custody redetermination (bond) hearing before an immigration judge ("IJ"). See Rodriguez Diaz, 53 F.4th at 1201–1202 (first, holding the detention scheme set forth in § 1226(a) and its implementing regulations constitutional under the Due Process Clause; second, detailing the numerous levels of review provided by the protections therein, including "the agency's initial

custody determination . . . an initial bond hearing before a neutral decisionmaker . . . and the right to seek a new hearing when circumstances materially change"; and finally, stating that § 1226(a)'s procedures stand as a reference point for the due process that should be required under the INA's other detention provisions); see also Jacobo-Ramirez, 834 F. Supp. 3d, at 1090–91 (discussing the same procedures, in addition to the "notice to appear" and arrest warrant requirements set forth by the statute and regulations).

The government's novel mass detention policies under § 1225(b)(2)(A) require no comparable procedures and are thus unmoored from any constitutional guardrails. As a result, noncitizens arrested and detained pursuant to policies, like Petitioner, can be indiscriminately arrested by ICE officers in the interior of the country and subjected to months of detention without adequate process. This is troubling, as the government has "no legitimate interest in detaining individuals who [are] not . . . a danger to the community and whose appearance at future immigration proceedings can be reasonably ensured by a lesser bond or alternative conditions." Hernandez v. Sessions, 872 F.3d 976, 994 (9th Cir. 2017) (citation omitted); see also Barbosa da Cunha v. Freden, 175 F.4th 61, 94 (2d Cir. 2026) ("While noncitizens can be detained temporarily to 'give[ ] immigration officials time to determine [their] status without running the risk of the [noncitizen] either absconding or engaging in criminal activity,' Jennings v. Rodriguez, 583 U.S. 281, 286 (2018), that is not what is going on here, where detention is mandatory regardless of these risks.") (citation modified); Lopez-Campos v. Raycraft, 175 F.4th 713, 732 (6th Cir. 2026) ("[T]he government's ability to detain noncitizens is not limitless. It should effectuate two regulatory goals: (1) ensuring the appearance of noncitizens at future immigration proceedings and (2) preventing danger to the community.") (citing Zadvydas, 533 U.S. at 690).

Because this Court has found Petitioner—and those similarly situated—is properly subject to the discretionary detention scheme of § 1226(a) under the INA itself, the Court compares the procedures he has been afforded heretofore under the § 1225(b)(2)(A) scheme to those he is owed by the § 1226(a) scheme. Cf. Rodriguez Diaz, 53 F.4th at 1202 ("[The Ninth Circuit] in fact cited § 1226(a)'s procedures as a reference point for what [the Ninth Circuit] believed should be required under [§§ 1225(b), 1226(c), and 1231(a)(6)].") As explained below, the Court concludes that

Petitioner's arrest and detention without the full suite of procedural protections provided by § 1226(a) violates his right to procedural due process. Likewise, the government's failure to articulate a constitutionally recognized interest in detaining Petitioner, including in these habeas proceedings, violates his right to substantive due process.

***i. Procedural Due Process***

The Fifth Amendment imposes procedural "constraints on government decisions which deprive individuals of" their liberty. Mathews v. Eldridge, 424 U.S. 319, 332 (1976). The specific demands of due process are flexible. See Morrissey v. Brewer, 408 U.S. 471, 481 (1972). To determine them, courts consider three distinct factors: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the [g]overnment's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement[s] would entail." Mathews, 424 U.S. at 335 (citation omitted); see also Rodriguez Diaz, 53 F.4th at 1203–1207 (reaffirming that the Mathews test is appropriate in the context of immigration detention). After carefully balancing these factors, the Court concludes that they weigh in favor of Petitioner, such that Petitioner's ongoing detention has not—and cannot—satisfy the procedural demands of due process.

*a. Private Interest*

First, the government is depriving Petitioner of his paramount interest in his own physical liberty. See Hamdi v. Rumsfeld, 542 U.S. 507, 529 (2004) (citation omitted) ("[T]he interest in being free from physical detention by one's own government" "is the most elemental of liberty interests."). This interest is especially weighty here, considering the lack of process he has received, and that was available to him at the outset of his detention. See Rodriguez Diaz, 53 F.4th at 1208 ("[I]n evaluating [a noncitizen's] interests under the first prong of [ ] Mathews, . . . [courts] must also consider the process [they] received . . . [and] the further process that was available to [them] . . . ."). Unlike the noncitizen in Rodriguez Diaz, who was afforded the full breadth of procedural protections under § 1226(a), Petitioner's detention under § 1225(b)(2)(A) affords no

pre-deprivation process at all as a matter of statute.[2]

Moreover, Petitioner is independently entitled to each of the procedures set forth in § 1226(a) and its implementing regulations. These procedures were specifically designed to protect the liberty interests of certain noncitizens while preserving agency discretion. As a result, noncitizens that should be subject to § 1226(a) and its accompanying procedures have a liberty interest in the government *following those procedures*. See Trinidad y Garcia v. Thomas, 683 F.3d 952, 956–57 (9th Cir. 2012) (finding that the detailed statutory scheme surrounding extradition has "generate[d] interests cognizable as liberty interests under the Due Process Clause" and an extraditee's "liberty interest under the federal statute and federal regulations entitles him to strict compliance by the Secretary of State with the procedure outlined in the regulations"). The necessary and unique purpose of each procedure is described in detail *infra*, Part IV.A.ii.

Further, Petitioner's interest in his own freedom is not diminished by the fact that he could receive a *post-deprivation* bond hearing. Where physical liberty is at stake, pre-deprivation process is necessary, and the lack of such process cannot be cured by the government's ability to conduct a post-hoc bond hearing. See Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 542 (1985) ("An essential principle of due process is that a deprivation of life, liberty, or property 'be preceded by notice and opportunity for hearing appropriate to the nature of the case.'") (emphasis added) (quoting Mullane v. Central Hanover Bank & Tr. Co., 339 U.S. 306, 313 (1950)); see also Goldberg v. Kelly, 397 U.S. 254, 267–68 (1970) (describing how due process principles require "timely and adequate notice detailing the reasons for a proposed termination" prior to a pre-termination hearing).

*b. Risk of Erroneous Deprivation*

Second, the risk of an erroneous deprivation of liberty is intolerably high under the government's faulty application of § 1225(b)(2)(A), which contains absolutely no procedural protections. While the government does not need to "undertake every possible effort to mitigate the risk of erroneous deprivation and the potential harm to the private party[,]… the Constitution

[2] See *infra* Part IV.A.ii. for discussion of the specific procedural protections under § 1226(a) that Petitioner has been deprived of under the government's instant application of their unlawful policies.

does require that the government take reasonable measures to ensure basic fairness to the private party and that the government follow procedures reasonably designed to protect against erroneous deprivation of the private party's interests." Kashem v. Barr, 941 F.3d 358, 379 (9th Cir. 2019).

Here, however, the government has acted unreasonably in eschewing its own statutory scheme—a scheme already heavily deferential to agency discretion—to do even less, that is, nothing at all. See Escobar Salgado, 809 F. Supp. 3d at 1161 ("There are no existing procedures whatsoever for Petitioners to challenge their detention pending the conclusion of their removal proceedings."). Case in point, under the government's interpretation, it does not have to determine whether Petitioner's detention serves a constitutional purpose. The government does not have to provide notice of its custody determination. Nor does the government have to afford Petitioner an opportunity to challenge the legality of their detention. As this Court has previously explained, this detention scheme epitomizes arbitrariness, as immigration officials have the "sole, unguided, and unreviewable discretion to detain Petitioners." Id. It stands in stark contrast to the government's own well-established procedures under § 1226(a), which serve as a safeguard against the erroneous deprivations of liberty. See Rodriguez Diaz, 53 F.4th at 1210 (citation omitted).

Under § 1226(a)'s regulatory scheme, the government must abide by numerous levels of process in arresting and detaining a noncitizen. First, a noncitizen cannot be detained without notice of the basis of their detention *vis-à-vis* a notice to appear ("NTA"), which must also be signed and served by a designated immigration officer. See 8 U.S.C. § 1229(a)(1); 8 C.F.R. §§ 239.1, 1003.15(b)(1). Per the governing regulations, which have been codified into statute at 8 U.S.C. § 1229(a)(1), the NTA must include, *inter alia*, the following information: "(1) [t]he nature of the proceedings against the [noncitizen]; (2) [t]he legal authority under which the proceedings are conducted; (3) [t]he acts of conduct alleged to be in violation of law; (4) [t]he changes against the [noncitizen] and the statutory provisions alleged to have been violated." 8 C.F.R. §§ 1003.15(b)(1)–(4); 8 U.S.C. § 1229(a)(1). Second, a noncitizen who falls within the § 1226(a)

statutory scheme cannot be arrested and taken into ICE custody without an administrative warrant,[3] which must be issued, signed, and served by a designated immigration officer simultaneous to, or after, the issuance of an NTA. See 8 C.F.R. §§ 236.1(b); 287.5(c), (e)(2), (e)(3); 287.8(c).

Third, "[w]hen a person is apprehended under § 1226(a), an ICE officer makes the initial custody determination," wherein the noncitizen has a *pre-deprivation* opportunity to "demonstrate to the satisfaction of the officer that such release would not pose a danger to property or persons, and that the [noncitizen] is likely to appear for any future proceeding," such that they can be released on bond and/or supervisory conditions, rather than detained while their removability is adjudicated. Rodriguez Diaz, 53 F.4th at 1196; 8 C.F.R. §§ 236.1(c)(8), (g).

Fourth and finally, a noncitizen has the right to appeal an ICE officer's custody determination through a prompt hearing before an IJ based on individualized evidence, wherein the IJ will order release on bond and/or conditions if the noncitizen establishes that they are not "a threat to national security, a danger to the community at large, likely to abscond, or otherwise a poor bail risk." Rodriguez Diaz, 53 F.4th at 1197 (citation and internal quotation marks omitted); see also 8 C.F.R. §§ 236.1(d)(1), 1003.19. At this hearing, the noncitizen bears the evidentiary burden of overcoming the presumption of detention. See In re Guerra, 24 I&N Dec. 37, 38 (BIA 2006) (allocating the evidentiary burden to disprove dangerousness or flight risk at a bond hearing before an IJ). That is why, when a noncitizen seeks to challenge their detention through a custody *redetermination* hearing (*i.e.*, a bond hearing), the noncitizen has already been provided notice of the legal bases—*at minimum*—underlying the government's custody determination, such that the hearing presents an opportunity to disprove and rebut the agency's determination. See 8 C.F.R. § 236.1(d) (delegating authority to IJs to hear "*[a]ppeals* from custody decisions" upon an

---

[3] This Court previously explained the limited exceptions to this requirement as follows:

> Immigration officers are authorized to make warrantless arrests in *limited circumstances* under the INA. These include when a noncitizen is "entering or attempting to enter the United States in violation of any law or regulation . . . regulating the admission, exclusion, expulsion, or removal of [noncitizens]," or when an officer has reason to believe (i.) the noncitizen is in the United States in violation of such laws or regulations and (ii.) the noncitizen is likely to "escape" before an arrest warrant can be obtained. 8 U.S.C. § 1357(a)(2); see also 8 U.S.C. §§ 1357(a)(4)-(5) (providing other circumstances that justify warrantless arrest).

Djiwaje v. Bondi, No. 2:26-cv-00344-RFB-MDC, 2026 WL 926753, at *2 (D. Nev. Apr. 6, 2026) (emphasis added).

application by the detainee "*[a]fter* an initial custody determination" by a designated officer) (emphasis added); see also Mathews, 424 U.S. at 345–46. Taken together, these procedures ensure that the government has a factual and legal basis for determining that a noncitizen's pre-adjudicative detention is necessary; simultaneously, they guarantee that the noncitizen has notice of said basis for their detention and an opportunity to be heard in rebuttal. See Rodriguez Diaz, 53 F.4th at 1210 ("These procedures ensure[ ] that the risk of an erroneous deprivation would be relatively small.") (citation and quotation marks omitted).

Because Mr. Colindrez Corona has not been afforded these procedures in full, he faces an excessive risk of erroneous deprivation. Specifically, based on the limited information provided to the Court, the Court finds Petitioner was not provided an initial custody determination nor a custody redetermination hearing. See Fed. Resp'ts' Answers to Interrogatories at 3, ECF No. 8-2 (stating that an initial custody determination was not conducted as to Petitioner); see Return at 3 (conceding that "Petitioner is entitled to a bond hearing under 8 U.S.C. § 1226(a) if he requests one", indicating that Petitioner has not received a custody redetermination hearing).

For these reasons, the Court additionally finds that the availability of a post-deprivation bond hearing, as requested by the government does not cure the risk of erroneous deprivation. Where physical liberty is at stake, some form of pre-deprivation process—akin to § 1226(a)'s procedural guardrails—is necessary. See Loudermill, 470 U.S. at 542 ("An essential principle of due process is that a deprivation of life, liberty, or property 'be preceded by notice and opportunity for hearing appropriate to the nature of the case.'") (emphasis added) (quoting Mullane, 339 U.S. at 313); Bd. of Regents of State Colls. v. Roth, 408 U.S. 564, 569–70 (1972) (footnote omitted) (Where liberty is "implicated, the right to some kind of prior hearing is paramount."); Logan v. Zimmerman Brush Co., 455 U.S. 422, 436 (1982) ("Absent the necessity of quick action by the State or the impracticability of providing any predeprivation process, a post-deprivation hearing [ ] would be constitutionally inadequate.") (internal quotation marks omitted) (citing to over a half dozen Supreme Court precedents that support this conclusion). The government has identified no impracticality nor necessity nor other extraordinary circumstance that would justify their failure to supply pre-deprivation process here. Thus, the government's request to offer a post-hoc bond

hearing, which would have occurred after Petitioner was already subjected to procedures that do not adequately guard against arbitrary detention, makes no difference—a finding our sister district courts have already made in this same context:

> Indeed, given the nature of the constitutional violation [Petitioner] sustained here—*i.e.*, Respondents' failure to conduct any kind of individualized assessment *before* detaining him—any post-deprivation review by an immigration judge would be inadequate. This is particularly so given that [d]etention under § 1226(a) is frequently prolonged because it continues until all proceedings and appeals are concluded.

Lopez Benitez v. Francis, 795 F. Supp. 3d 475, 497 (S.D.N.Y. 2025) (internal quotations and citation omitted); see also Zaitsev v. Warden, Adelanto, No. 2:26-cv-00454-SPS-AGS, 2026 WL 1047942, at *7 (C.D. Cal. Apr. 15, 2026) ("[A] post-detention bond hearing is insufficient to cure a violation of procedural due process arising from detention without a pre-deprivation hearing.") (internal quotation marks omitted).[4]

In sum, § 1226(a) and its implementing regulations set forth procedural safeguards that work together to significantly reduce the risk of erroneous deprivation. For thirty years, these procedures have consistently been applied to individuals like Petitioner, affording them notice and an opportunity to be heard and, thereby, protecting them against arbitrary detention.[5] Indeed, the

---

[4] Moreover, if a noncitizen appeals their custody redetermination decision to the BIA, see 8 C.F.R. § 1003.38, it is unclear whether that noncitizen would remain subject to § 1226(a)'s procedures and standards, even if the IJ conducted the custody redetermination under pursuant to § 1226(a). While Hurtado is vacated within this district by Jacobo-Ramirez—and Hurtado's statutory interpretation has been rendered unlawful by the Ninth Circuit in Rodriguez Vazquez, as well as in eight other circuits, see generally Guerrero Orellana v. Moniz, 188 F.4th 1 (1st Cir. 2026); Barbosa da Cunha v. Freden, 175 F.4th 61 (2d Cir. 2026); Buele Morocho v. Warden, 189 F.4th 287 (3d Cir. 2026); Lopez Garcia v. Guadian, 190 F.4th 305 (4th Cir. 2026); Lopez-Campos v. Raycraft, 175 F.4th 713 (6th Cir. 2026); Rojas v. Olson, 183 F.4th 909 (7th Cir. 2026); Quiroz v. Mullin, 180 F.4th 1226 (10th Cir. 2026); Alvarez v. Warden, 175 F.4th 1258 (11th Cir. 2026)—the BIA has taken no action to stay, reverse, or otherwise enjoin Hurtado nationwide. Thus, treatment of noncitizens like Petitioner under § 1225(b)(2)(A) remains "good law" in the eyes of the BIA. For that reason, this Court has little faith that a noncitizen would be afforded coherent procedural protections that comport with the INA, the law of this Circuit, and due process if forced to seek an appeal of an adverse § 1226(a) custody redetermination decision before the BIA.

[5] Even when compared to other mandatory detention provisions of the INA—which apply to noncitizens arrested within the interior of the country (like Petitioner) and not while arriving at its borders—individuals detained under § 1225(b)(2)(A) are uniquely deprived of procedural protections, namely pre-deprivation notice and a timely opportunity to challenge the government's basis for their arrest and detention, as, for example, based on a mistake of fact. See, e.g., Demore v. Kim, 538 U.S. 510, 514 n.3 (2003) (describing the availability of a "Joseph hearing," which is "immediately provided to a detainee who claims that he is not covered by § 1226(c)," and where "the detainee may avoid mandatory detention by demonstrating that he is not [a noncitizen], was not convicted of the predicate crime, or that [the agency] is otherwise substantially unlikely to establish that he is in fact subject to mandatory detention.") (citing 8 C.F.R. § 3.19(h)(2)(ii) (2002); Matter of Joseph, 22 I&N Dec. 799 (BIA 1999)).

government's failure to provide these procedures flies in the face of the Ninth Circuit's finding that § 1226(a)'s procedural scheme comports with the demands of our Constitution. See Rodriguez Diaz, 53 F.4th at 1209–10.

*c. Government's Interest*

Third, the government's interest in enforcing immigration law, and presumed interest in detaining noncitizens who are dangerous and/or a flight risk, are served, and not unduly burdened, by the longstanding procedural protections that were typically afforded to noncitizens like Petitioner. See Escobar Salgado, 809 F. Supp. 3d at 1161–62. The government has, for years, demonstrated its ability to adequately administer the regulatory scheme set forth in § 1226(a) to the satisfaction of its own interests. Moreover, the procedural requirements of § 1226(a) *reduce* the fiscal and administrative burden of civil immigration detention by limiting detention to noncitizens who are actually dangerous or a flight risk. See id. at 1162 ("[T]he Court finds that limiting the use of detention to only those noncitizens who are dangerous or a flight risk through existing [ ] procedures serves the government's and public's interest by *reducing* the fiscal and administrative burdens attendant to immigration detention."); see also Jacobo-Ramirez, 834 F. Supp. 3d, at 1119 ("Recent estimates by the federal government find that supervised release programs such as those available under § 1226 cost less than $4.20 each day per participant, compared with detention costs of $152 per day.") (citation omitted). Similarly, the public interest is served by the procedures under § 1226(a), as these limit the "substantial societal costs" that "unnecessary detention imposes" by "separat[ing] families and remov[ing] from the community breadwinners, caregivers, parents, siblings[,] and employees." Hernandez-Lara v. Lyons, 10 F.4th 19, 33 (1st Cir. 2021) (citation omitted).

***ii. Substantive Due Process***

Substantive due process protects individuals from government action that interferes with fundamental rights. See Regino v. Staley, 133 F.4th 951, 959–60 (9th Cir. 2025). "Governmental action that infringes a fundamental right is constitutional only if 'the infringement is narrowly tailored to serve a compelling state interest.'" Id. at 960 (quoting Reno v. Flores, 507 U.S. 292, 302 (1993)) (citation omitted). Civil immigration detention violates a noncitizen's substantive due

process rights except in certain "special and 'narrow' nonpunitive 'circumstances,' [see] Foucha v. Louisiana, 504 U.S. 71, 80 (1992), where a special justification . . . outweighs the 'individual's constitutionally protected interest in avoiding physical restraint.'" Zadvydas, 533 U.S. at 690 (citation modified) (quoting Kansas v. Hendricks, 521 U.S. 346, 356 (1997)). To date, the government has not asserted an individualized justification—let alone a special or compelling justification—for depriving Petitioner of his freedom. Thus, the Court finds that Petitioner's detention violates substantive due process. Cf. Escobar Salgado, 809 F. Supp. 3d at 1162 (elaborating on this same analysis and reaching the same conclusion).

For the foregoing reasons, the Court concludes that Petitioner's detention violates procedural and substantive due process and is, therefore, unconstitutional.

## IV. REMEDY

Based on the record before it, the Court finds that Petitioner has been subjected to over a month of arbitrary detention in violation of his statutory and constitutional rights. Thus, the Court's task is to determine the appropriate remedy for these violations. See Burnett v. Lampert, 432 F.3d 996, 999 (9th Cir. 2005) (citation omitted) ("Federal courts have a fair amount of flexibility in fashioning specific habeas relief. . . . The court is free to fashion to the remedy as law and justice require . . . ."); Brown v. Davenport, 596 U.S. 118, 132 (2022) (quoting 28 U.S.C. § 2243) (same). For the following reasons, the Court finds that immediate release is the appropriate equitable remedy in this case.

As previously stated, Respondents have asserted that 8 U.S.C. § 1225(b)(2)(A)—and its associated procedures, or rather, lack thereof—governs Petitioner's detention. See Fed. Resp'ts' Answers to Interrogatories at 3, ECF No. 8-2. Due to Respondents' erroneous statutory interpretation, Petitioner has been deprived of the procedural protections he is entitled to under 8 U.S.C. § 1226(a), as a matter of statute and the Constitution.

On that basis, the Court finds Petitioner's detention has been "unlawful from its inception because ICE detained [him] under the wrong statute and without affording [him] any notice or process whatsoever, much less the procedures due under Section 1226(a)." Rodriguez-Acurio v.

Almodovar, 811 F. Supp. 3d 274, 319–20 (E.D.N.Y. 2025) (ordering a noncitizen's release on this basis and finding that a subsequent "bond determination by a DHS officer or an immigration judge would not remedy the core constitutional violation at issue[.]"). In the absence of an initial custody determination prior to detention—which establishes a lawful basis for detention in the first instance—a subsequent bond hearing "is no substitute for the requirement that ICE engage in a deliberative process prior to, or contemporaneous with, the initial decision to strip" Petitioner of his freedom. See Lopez Benitez, 795 F. Supp. 3d at 497 (citations omitted). Immediate release is thus the appropriate remedy for Federal Respondents' "detain first, justify later" approach to Petitioner's liberty, which mangles § 1226(a)'s regulatory framework and the basic demands of due process.

Moreover, as discussed above, see *supra* Part IV.A, a custody redetermination hearing without pre-deprivation process flouts the regulatory scheme that empowers IJs to hear "*[a]ppeals* from custody decisions" "*[a]fter* an initial custody determination." 8 C.F.R. § 236.1(d) (emphasis added). Not only that, but Federal Respondents' persistent refusal to follow regulations has obfuscated the standards that apply to bond hearings—as evidenced by Petitioner's misunderstanding and subsequent withdrawal of his bond motion. Accordingly, since ICE continues to enforce its vacated policy, any post-deprivation bond hearing before an IJ does not comply with § 1226(a)'s regulations.

For all these reasons, the Court will not ratify the government's lawless conduct by ordering Respondents to provide another bond hearing for Petitioner. While ordering a new bond hearing at which the government bears the evidentiary burden by clear and convincing evidence may be an appropriate remedy in some cases, under these circumstances, the Court declines to prolong Petitioner's unlawful detention any further. Ordering a bond hearing here "would effectively allow the Government to transform an unlawful detention into a lawful one through *post-hoc* justifications," such that it would not remedy the harms Petitioner has suffered. Zheng v. Rokosky, 826 F. Supp. 3d 545, 563 (D.N.J. 2026); see also, e.g., E.A. T.-B. v. Wamsley, 795 F. Supp. 3d 1316, 1324 (W.D. Wash. 2025) (citation omitted) ("Although the Government notes that Petitioner may request a bond hearing while detained, such a post-deprivation hearing cannot serve

as an adequate procedural safeguard because it is after the fact and cannot prevent an erroneous deprivation of liberty."); Domingo v. Kaiser, No. 25-cv-05893 (RFL), 2025 WL 1940179, at *3 (N.D. Cal. July 14, 2025) (citation omitted) ("Even if Petitioner[ ] received a prompt post-detention bond hearing under 8 U.S.C. § 1226(a) and was released at that point, he will have already suffered the harm that is the subject of his motion: that is, his potentially erroneous detention."). Moreover, ordering a bond hearing would provide Federal Respondents with yet another opportunity to violate this Court's orders and due process.[6]

The Court thus finds "the typical remedy" for "unlawful executive detention"—immediate release from custody—is appropriate here. See Munaf v. Geren, 553 U.S. 674, 693 (2008). Additionally, the Court finds that it must adopt equitable remedies to ensure that Federal Respondents abide by due process moving forward. Cf. U.S. v. Handa, 122 F.3d 690, 691 (9th Cir. 1997) (describing the broad, flexible power federal courts possess to fashion equitable relief in the context of habeas corpus proceedings). Here, the Court finds it appropriate to require that, in the event DHS seeks to (re)detain Petitioner under § 1226(a), Federal Respondents must provide him with a *pre-deprivation* bond hearing wherein the government must prove, by clear and convincing evidence, that detention is appropriate. See Martinez v. Clark, 124 F.4th 775, 784 (9th Cir. 2024) (citation omitted) (reviewing EOIR's compliance with a district court's conditional writ, which ordered EOIR to conduct a bond hearing—as a matter of due process—where the government was required to "show by clear and convincing evidence that the detainee presents a flight risk or a danger to the community."); Gonzalez-Juarez v. Bondi, 137 F.4th 996, 1003 (9th Cir. 2025) (describing Martinez). While the Court does not take this step lightly, it finds it is necessary because of Federal Respondents' egregious violations of the law and Petitioner's rights to date.

---

[6] In related habeas matters where the Court has issued a conditional writ, which afforded Federal Respondents an opportunity to cure a petitioner's unlawful detention through a constitutionally adequate bond hearing, Federal Respondents have repeatedly defied the dictates of those orders, requiring post-judgment enforcement. See, e.g., Diaz v. Mattos, No. 2:26-cv-00926-RFB-BNW, 2026 WL 1270816, at *6 (D. Nev. May 9, 2026); Order Enforcing Writ of Habeas Corpus at 10–11, Cruz Perez v. Blanche, No. 2:26-cv-00315-RFB-DJA (D. Nev. May 15, 2026) (ECF No. 31); Salazar-Lopez v. Mullin, No. 2:26-cv-00871-RFB-MDC, 2026 WL 1414066, at *3 (D. Nev. May 20, 2026); Alfaro Cruz v. Bernacke, No. 2:26-cv-00080-RFB-BNW, 2026 WL 1414096, at *4 (D. Nev. May 20, 2026).

Therefore, the Court finds Petitioner's detention has been unlawful under both the INA and the Due Process Clause from the moment it began, and immediate release—"the typical remedy" for "unlawful executive detention"—is appropriate here.[7]

## V. CONCLUSION

Based on the foregoing, **IT IS HEREBY ORDERED** Petitioner's Petition for Writ of Habeas Corpus (ECF No. 1-1) is **GRANTED**.

**IT IS FURTHER ORDERED** Respondents must **RELEASE** Petitioner from detention on his personal recognizance on **November 19, 2026** between the hours of **12:00 P.M. and 3:00 P.M.** Counsel for Petitioner (or their designee/agent) will be permitted to wait in the Federal Justice Tower lobby during the release window.

**IT IS FURTHER ORDERED** Respondents are **PROHIBITED** from imposing release conditions that substantially interfere with Petitioner's liberty, such as electronic monitoring, without having established the reasonableness of those restrictions, by clear and convincing evidence, at a pre-deprivation hearing. If Federal Respondents impose release conditions in violation of this Order, the Court will consider contempt sanctions against the agency officials responsible.

**IT IS FURTHER ORDERED** Respondents must return Petitioner's personal property, including any personal identification and employment authorization documents, **UPON HIS RELEASE.** If Federal Respondents fail to do so, the Court will consider contempt sanctions against the agency officials responsible.

**IT IS FURTHER ORDERED** Respondents are **PERMANENTLY ENJOINED** from detaining Petitioner pursuant to 8 U.S.C. § 1225(b)(2)(A).

**IT IS FURTHER ORDERED** Respondents may not re-detain Petitioner during the pendency of his current removal proceedings until after an immigration court hearing is held, with

---

[7] Moreover, the Court finds that, to the extent Respondents have afforded Petitioner *some* procedures associated with § 1226, it is clear from the record that Respondents have admittedly not complied with the regulations in full, as required by the statute, its implementing regulations, and this Court's declaratory judgment. See Jacobo-Ramirez, 834 F. Supp. 3d at 1120; see also Rodriguez Diaz v. Garland, 53 F.4th 1189, 1201–1202 (9th Cir. 2022). In addition, immediate release is particularly appropriate given Respondents' lengthy history of non-compliance and defiance in similar cases. See Rios-Rodriguez, 2026 WL 2280924 at *9–12.

adequate notice, to determine whether detention is appropriate under the INA and its implementing regulations. To the extent the government seeks to detain Petitioner under 8 U.S.C. § 1226(a), it bears the burden of establishing that detention is appropriate by clear and convincing evidence.

**IT IS FURTHER ORDERED** the Parties must file a **JOINT STATUS REPORT** by **November 20, 2026** confirming Respondents' compliance with this Order, including: (i) the date and time of Petitioner's release; (ii) compliance with this Court's directives concerning release on personal recognizance; and (iii) the return of Petitioner's personal property.

The Clerk of Court is kindly instructed to update Petitioner's name on the docket to "Orlando Enrique Colindrez Corona," enter judgment accordingly, and close this case. The Court retains jurisdiction to enforce its order and judgment. Petitioner may move to reopen this case to enforce the judgment without filing a separate case.

**DATED:** November 18, 2026.

**RICHARD F. BOULWARE, II**
**UNITED STATES DISTRICT JUDGE**